

U.S. COURTS

2003 JUN 20   A 10: 08

REC'D_____ FILE____
CAMERON S. BURKE,
CLERK, IDAHO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor,<br>United States Department of Labor,<br><br>        Plaintiff,<br><br>v.<br><br>EMPLOYERS RESOURCE<br>MANAGEMENT COMPANY, INC., a<br>corporation; GEORGE GERSEMA, an<br>individual; DOUGLAS GERSEMA, an<br>an individual; EMPLOYERS RESOURCE<br>MANAGEMENT COMPANY, INC.<br>WELFARE BENEFIT PLAN, an employee<br>benefit plan; and AMERICAN<br>EMPLOYER BENEFIT TRUST,<br><br>        Defendants. | CASE NO. CV 02-12-S-EJL<br><br>**ORDER** |

## INTRODUCTION

On January 14, 2002, Plaintiff Elaine Chao, Secretary of Labor, United States Department

of Labor, filed the present action against Defendants Employer Resource Management Company

("ERM"), Inc., an Idaho corporation, and several others, including individual Defendants George

Gersema and Douglas Gersema (collectively, "Defendants"). Plaintiff alleges violations of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 for

136

breach of fiduciary duty, and seeks several remedies including disgorgement of profits and a permanent injunction. Currently pending before the Court for its consideration are the following motions: (1) Defendants' Motion to Strike (Docket No. 106), filed April 22, 2003; (2) Plaintiff's Motion to Strike (Docket No. 121), filed May 8, 2003; and (3) Defendants' Motion for Reconsideration (Docket No. 125), filed May 9, 2003. On June 16, 2003, the Court conducted a telephonic hearing on the motions to strike for all parties participating.[1]

## I.
## Background

Plaintiff brings this action against Defendants pursuant to her statutory authority under the civil enforcement provisions of ERISA. 29 U.S.C. §§ 1132(a)(2) & (a)(5). Plaintiff alleges that the Defendants are subject to co-fiduciary liability in connection with their management and administration of the ERM Employee Welfare Benefit Plan.

ERM offers various employment services to businesses. Specifically, ERM offers certain administrative employment services such as payment of employee payroll. A business that wishes to out-source its various employer administrative obligations will contact ERM and enter into a "Client Service Agreement." Pursuant to the agreement, ERM and its client act as co-employers and split certain employer responsibilities. ERM specifically becomes responsible for payment of: employee payroll; employer federal, state and local taxes; specified employee benefits; and all required federal, state and local employee payments or withholdings from wages. In exchange for the performance of payroll and other administrative services, the client

---

[1]. Pursuant to Local Rule 7.1(d)(4), the Court has determined that no hearing is necessary on Defendants' Motion to Reconsider and the Court will therefore decide the motion based upon the parties' written submissions.

business pays ERM a fee. The client businesses vary widely and are not of the same type or within the same industry.

As an optional part of its services, ERM offers an employee welfare benefit plan to employees of client businesses. The welfare benefit plan consists of various health related benefit options. A client wishing to provide health benefits to its employees will enter into the ERM Employee Welfare Benefit Plan (the "Plan") and will commit to fund employee benefits at a certain level. In turn, the employees of the client business may enroll in the benefits package that the client has agreed to fund or the employees can select a different or better benefit package at an additional cost. The claims of plan participants are paid from a trust known as the American Employers Benefit Trust (the "Trust"). The Trust also holds funds for ERM's workers compensation benefits along with other aspects of the health portion of the Plan. ERM is the administrator and sponsor of the Plan, as well as the settlor and trustee of the Trust.

ERM provides the above services under the Client Service Agreement. Pursuant to the agreement, the client businesses that participate in the Plan transfer funds to ERM to cover the cost of payroll, various employment taxes, worker's compensation premiums, the administrative fees for the services, and benefit premiums (or contributions to the trust in the case of employees enrolled in the self-funded option). ERM deposits these funds into its general corporate account and later turns the allocable amounts over to the Plan. Participant's claims are paid out of the Trust and, in the event the amounts claims exceed the amounts contributed to the Trust, ERM uses its own assets to pay for the claim.[2] The Trust currently owes ERM hundreds of thousands of dollars.

---

[2]. Defendants describe ERM's trust contributions to cure the deficit amounts as "an interest-free loan."

**Order – Page 3**

## II.
## Discussion

Plaintiff has filed a motion for summary judgment on all claims, which is briefed and presently before the Court. Defendants, however, have filed a motion to strike certain exhibits that Plaintiff has submitted in support of her motion. Likewise, Plaintiff has filed a motion to strike certain exhibits that Defendants have submitted in response to Plaintiff's motion for summary judgment. Because the motions to strike relate to the pending motion for summary judgment, the Court will reference portions of the pleadings and certain of the parties arguments submitted in relation to the motion for summary judgment.

### A.     Defendants' Motion to Strike

Defendants move to strike Exhibits 36 and 37, which Plaintiff has submitted in support of her motion for summary judgment. Exhibit 36 is Department of Labor Advisory Opinion 93-29A issued in October 1993 to the Virginia Bureau of Insurance regarding ERM. The advisory opinion discusses the ERM Employee Welfare Benefit Plan and concludes that by offering the Plan to its various clients, ERM is operating an multiple employer welfare arrangement ("MEWA"). Exhibit 37 contains three advisory opinion letters issued by the Department of Labor to various entities that are not connected with ERM. Each of these advisory opinions discuss whether certain activities by plan administrators constitute prohibited transactions in violation of ERISA § 406.

### A.     Exhibit 36

Defendants argue that Exhibit 36 should be excluded because its contents do not relate to any of the issues presently before the Court and are therefore irrelevant. Advisory Opinion 93-

29A contains an analysis of whether ERM is operating a MEWA. Because Defendants have
argued that the advisory opinion is not relevant, the Court will briefly examine whether ERM's
alleged operation as a MEWA has any bearing on the ERISA fiduciary breach issues before the
Court.

A "MEWA" is defined as "an employee welfare benefit plan, or any other arrangement
(other than an employee welfare benefit plan), which is established or maintained for the purpose
of offering or providing any [employee welfare benefit] to the employees of two or more
employers . . .." 29 U.S.C. § 1002(40). As defined, an MEWA can either be an ERISA governed
"employee welfare benefit plan" or some other non-ERISA benefit arrangement. The
significance of whether a plan constitutes a MEWA becomes evident upon examination of the
ERISA preemption provision, which allows for certain regulation under state law, including
maintenance of reserves and specified levels of contributions, for certain MEWAs that are also
ERISA-governed employee welfare benefit plans.[3]  Accordingly, those ERISA plans that also
constitute MEWAs are subject not only to federal regulation under ERISA, but also certain state
regulation. Therefore, the significance in determining whether a benefit plan is also MEWA
relates to whether a state may regulate the plan.

In this action, Plaintiff's claims are for breach of fiduciary duty and co-fiduciary liability
under ERISA. Accordingly, the threshold question is whether the ERM Plan is an ERISA
governed plan. Neither party disputes the ERM Plan is an employee welfare benefit plan under
29 U.S.C. § 1002(1) and that ERISA would therefore apply. The only reason to take the

---

[3]. Specifically, those MEWAs that are fully insured are subject to state law regulation regarding specified
levels of reserves and contributions. 29 U.S.C. § 1144(6)(A)(i). Any other MEWA is subject to state regulation to
the extent that it is not inconsistent with ERISA. 29 U.S.C. § 1144(6)(A)(ii).

additional step to determine whether the Plan constitutes a MEWA would be if there were some

question regarding state regulation of the ERM Plan. That question, however, is not before the

Court, as there are no state law claims.

Since there is no dispute as to the application of ERISA, the characterization of the Plan

as a MEWA, at this point, appears unnecessary to the Court's decision on the motion for

summary judgment. To the extent that the Advisory Opinion addresses the MEWA as a

jurisdictional issue, i.e., whether it is subject to state regulation, it would not be relevant or affect

the breach of fiduciary duty analysis and can therefore be stricken in part. Plaintiff, however,

argues that the characterization of the ERM Plan as a MEWA is relevant to how the experts

analyze the ERISA plans arranged in such a fashion. This argument focuses on how the Plan is

structured and has direct relevance on the breach of fiduciary duty issue, but it would be

unnecessary for the Court to determine whether the Plan is a MEWA. In other words, the Court

can analyze the structure of the Plan, without assigning the MEWA label, in the context of

analyzing the breach of fiduciary duty issues. Accordingly, the portion of the advisory opinion

that offers the Department of Labor's view in relation to the structure of the ERM Plan and the

nature of the Plan is relevant and will not be stricken.[4]

**B.      Exhibit 37**

---

[4]. Defendants argue that the advisory opinion was not issued by a neutral agency because the opinion was solicited by a state insurance agency and ultimately provides a basis for state regulation. In order to be subject the state regulation, the Plan must be a MEWA and, as such, Defendants' argument necessarily challenges the DOL's determination that the Plan is a MEWA. This is challenge to the MEWA as a jurisdictional concern, i.e., whether the state may regulate the Plan and has nothing to do with whether ERISA applies. The Court has stated that the MEWA issue, insofar as it relates to jurisdiction, is not relevant to the determination of the fiduciary breach issues and will therefore not address the neutrality of the agency decision.

Defendants argue that the advisory opinions contained in Exhibit 37 should be stricken

primarily because they do not relate to ERM. Each of the advisory opinions contained in Exhibit

37 discuss the extent to which plan assets may be used to pay for services performed when such

services relate to the plan and whether such payment would constitute a prohibited transaction

under ERISA.

In arguing that the three advisory opinions have no persuasive authority, Defendants cite

the DOL's advisory opinion procedure, which states that:

> *Effect of Advisory Opinion.* An advisory opinion is an opinion of the Department
> as to the application of one or more sections of the Act, regulations promulgated
> under the Act, interpretive bulletins, or exemptions. The opinion assumes that all
> material facts and representations set forth in the request are accurate, and applies
> only to the situation described therein. <u>Only the parties described in the request
> for opinion may rely on the opinion</u>, and they may rely on the opinion only to the
> extent that the request fully and accurately contains all the material facts and
> representations necessary to issuance of the opinion and the situation conforms to
> the situation described in the request for opinion.

*ORI Advisory Opinion Procedure* § 10 (emphasis added). By its careful wording, the provision

appears to be a prudential statement of the DOL's policy. While this policy may detail the effect

of the advisory opinion vis-a-vis the parties described in the opinion, the Ninth Circuit has cited

and relied upon these types of advisory opinions on several occasions. *Waller v. Blue Cross of*

*Cali.*, 32 F.3d 1337, 1343 n.12, 1346 (9th Cir. 1997); *Moideen v. Gillespies*, 55 F.3d 1478, 1481

(9th Cir. 1995); *Connolly v. PBGC*, 581 F.2d 729, 730 (9th Cir. 1978). Accordingly, such

advisory opinions are properly before the Court to the extent they are relevant and assist the

Court in deciding the motion for summary judgment. In reviewing Plaintiff's Complaint and

motion for summary judgment, the Court notes that Plaintiff alleges that Defendants have

improperly paid for certain services with Plan assets. Comparing these allegations with the

transactions described in the advisory opinions, the Court finds the advisory opinions to be relevant. For that reason, the Court will not strike Exhibit 37.

### B.    Plaintiff's Motion to Strike

Plaintiff moves to strike three affidavits that Defendants have submitted in their opposition to Plaintiff's motion for summary judgment. Particularly, Plaintiff moves to strike either a portion or the entirety of the affidavits of Trish Coba, Russell E. Greenblatt, and Charles B. Jackson.

### 1.    Affidavit of Trish Coba

Plaintiff argues that the Court should strike the Affidavit of Trish Coba because Defendants failed to disclose Ms. Coba as a fact or expert witnesses through initial disclosures or discovery, because Plaintiff's have not had the opportunity to depose Ms. Coba, and because portions of Ms. Coba's affidavit are not based on personal knowledge. Defendants state that they do not intend to present the opinions of Ms. Coba as expert opinions and therefore Ms. Coba is not an expert witness. Defendants also argue that Ms. Coba was fairly disclosed as a witness in prior discovery and that Ms. Coba's affidavit is based on her personal knowledge.

Plaintiff asserts that the affidavit of Ms. Coba should be excluded because Defendants have failed to identify her as a witness in prior discovery, viz., the initial disclosure requirements of Federal Rule of Civil Procedure 26(a)(2). Defendants argue that Trish Coba, an employee of Marsh Advantage America, had been disclosed previously by Plaintiff, citing Plaintiff's initial disclosures identifying: "Representative of Marsh Advantage America, address and telephone number know to Defendants." Defendants state that they incorporated this identification by

reference, noting in their own initial disclosures: "Defendants reserve the right to use other individuals that may be identified by any other party in this matter."

Between the two initial disclosures, however, neither party specifically identified Trish Coba by name. Defendants first argue that their catchall sentence reserving the right to use other individuals identified by any other party constituted a sufficient disclosure of Trish Coba. Defendants also argue that in addition to properly disclosing Ms. Coba as a witness, they were not required to supplement their initial disclosures under Rule 26(e)(1) because Ms. Coba's name appeared on various documents produced in discovery and Plaintiff had otherwise been made known of the additional or corrective information. This is disclosure by fiat. Defendants' first argument necessarily assumes that Plaintiff identified Trish Coba in their initial disclosures. Plaintiff did not; rather, Plaintiff identified a representative of Marsh Advantage. Further, that Plaintiff may have known of Ms. Coba because her name appeared on discoverable documents is far different from specifically identifying Ms. Coba as a witness. Defendants did not fairly identify Trish Coba as a fact witness under the Federal Rules either by initial disclosure or by supplementation. Accordingly, the Court will grant Plaintiff's motion to strike the Affidavit of Trish Coba for failure to disclose under Rule 26(a).[5]

### 2.   Affidavit of Russell E. Greenblatt

Plaintiff moves to strike the affidavit of Russell E. Greenblatt because the report contains his legal conclusions as to matters within the province of the Court. Mr. Greenblatt is an attorney

---

[5]. Because Defendants believe that they properly and timely disclosed Ms. Coba as a fact witnesses, they do not argue that they have substantial justification for failing to disclose Ms. Coba and that such failure was harmless under Rule 37(c)(1). The Court, however, finds that further delay in this case is not warranted. Discovery closed months ago and Plaintiff's Motion for Summary Judgment has been pending since January 31, 2003. In addition, the Court has previously granted Defendants additional time to respond Plaintiff's motion for summary judgment and has also denied Defendants' Rule 6(b) motion to extend discovery deadlines.

that ERM has retained as an expert for the purpose of addressing various ERISA related issues. The Greenblatt Affidavit contains his expert report, which details various legal issues involved in the present action. Plaintiff argues that the report contains legal conclusions as to the ultimate issues before the Court, including whether ERM's actions amount to ERISA violations or whether certain actions meet ERISA standards. Defendants argue that in situations involving complex regulatory or legal standards, the opinions of experts as to the meaning or application of legal standards is appropriate.

Expert testimony is admissible "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702. As a general matter, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. Expert opinions on questions of law, however, are not admitted because such matters are for the Court to decide. *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)(explaining that legal issues such as reasonableness and foreseeability of a party's reliance were matters of law for the court's determination and, as such, they were inappropriate subjects for expert testimony); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

While the ERISA issues before the Court are undoubtedly complex, the legal conclusions contained in the Greenblatt expert report are far beyond opinion regarding the meaning or application of a legal standard. For instance, at one point the report states that with regard to handing plan assets in a particular way, that "it was not a violation of ERISA to operate in this manner." Whether ERM has violated or complied with ERISA is not the proper subject of

opinion testimony and invades the province of the Court. Accordingly, the portions of the report containing these types of legal conclusions will be stricken. However, the other portions of the expert report that do not contain legal conclusions will assist the Court and will not be stricken.

### 3.     Affidavit of Charles B. Jackson

Plaintiff moves to strike the affidavit of Charles B. Jackson, arguing that Jackson offers testimony that is not contained in his expert report. Specifically, Plaintiff challenges Jackson's statements that distinguish a professional employer organization ("PEO") from a MEWA and how such distinction relates to ERM. Plaintiff argues that Defendants did not identify Mr. Jackson as an expert on PEOs and his testimony should therefore be stricken. Defendants argue that they offer Mr. Jackson's as an expert on employee benefits management and not as an expert on PEOs. Defendants further argue that such testimony regarding ERM's status as a PEO is proper because Plaintiff opened the door as to the status of Defendants' business during the deposition of Mr. Jackson.

Under Rule 26(a)(2), a party must identify its expert(s) along with an expert report prepared by the witness that contains, among other things, "a complete statement of all opinions to be expressed." FED. R. CIV. P. 26(a)(2)(A) & (B). Under the Local Rules, "[e]xcept for good cause shown, the scope of subsequent testimony by an expert witness must be limited to those subject areas identified in the disclosure report *or through other discovery such as a deposition*." D. Idaho Loc. R. 26.2(b) (emphasis added).

In the present action, Mr. Jackson's expert report is dated July 6, 2002. The report contains various references to PEOs in general and ERM's status as a PEO in particular. At one point, the report states that "ERM is a PEO." Plaintiff states that Mr. Jackson's report contains

only a few passing references to PEOs and does not contain a discussion regarding the distinction between a PEO and MEWA. During Mr. Jackson's deposition on December 10, 2003, however, counsel for Plaintiff questioned Mr. Jackson as to whether the ERM Plan was a MEWA or single employer plan. Mr. Jackson responded that it was not a MEWA and immediately described the Plan within the context of a PEO. *Depo. of Charles Jackson*, p.69, L.25 - p.70, L.14. Mr. Jackson also later described his experience with employee benefit plans and distinguished PEOs, MEWAs, and Multiple Employer Trusts. *Id.*, p.138, L.24 - p.140, L.18. Accordingly, by her own questioning, counsel for Plaintiff raised the distinction between various benefits arrangements such as MEWAs and PEOs. While Mr. Jackson's report discussed ERM's arrangement in the context of a PEO and did not specifically compare and contrast such arrangement with a MEWA, the Court concludes that the issue was fairly identified during his deposition. Accordingly, the scope of permissible expert testimony would include an analysis of ERM's structure as it relates to PEOs and MEWAs. For that reason, the Court will deny Plaintiff's motion to strike the Affidavit of Charles Jackson.

**B.   Defendants' Motion for Reconsideration**

On April 17, 2003, Defendants filed a Motion to Extend Discovery to conduct additional discovery regarding the extent of interaction between the Department of Labor and Idaho Department of Insurance. On April 28, 2003, the Court denied Defendants' motion to extend discovery, explaining that Defendants had not established good cause to extend the deadline. Specifically, the Court made two important findings: (1) that the interaction or coordination between the two agencies does not appear to be relevant to any of the issues to be litigated; and (2) throughout the various motions and briefs that Defendants have filed on this issue,

Defendants have not explained the relevance of such interaction or how the development of such interaction is necessary in responding to Plaintiff's Motion for Summary Judgment.

In their motion for reconsideration, Defendants explain for the first time the relevance of the interaction between the Department of Labor and the Idaho Department of Insurance. Specifically, Defendants state that the interaction is important with regard to the MEWA issue, discussed above. Defendants also assert that it is beyond dispute that Plaintiff has put the MEWA issue before the Court in her motion for summary judgment and that Defendants "did not conduct extensive discovery as to this issue earlier because they firmly believed it had no relevance to the instant litigation." Defendants' arguments, however, do not establish good cause to extend the discovery deadline. Defendants have known about the MEWA issue from the time Plaintiff filed the Complaint. *See* Complaint ¶¶ 8, 10, 19, 20, 26, 37, 38, & 40. Accordingly, Defendants cannot demonstrate that the MEWA issue is new or that it suddenly became aware of the interaction between the two agencies. The Court therefore concludes that Defendants have not demonstrated good cause to extend the discovery deadlines and their motion for reconsideration is denied.

## III.
## Conclusion

The Court concludes that Defendants Motion to Strike will be granted in part and denied in part. The MEWA issue is primarily jurisdictional in nature and is not necessary to determine whether ERISA applies in this case or the corresponding breach of fiduciary duty issues. Accordingly, Exhibit 36 will be stricken to the extent it discusses MEWA as a means to confer regulatory control to the states. Exhibit 37, however, will not be stricken, as it discusses various

payments for services from plan assets and whether those payments constitute prohibited transactions under ERISA. The payment for services from the ERM Plan is a central issue in the fiduciary breach claims and the advisory opinions contained in Exhibit 37 provide guidance on this issue.

The Court concludes that Plaintiff's Motion to Strike will be granted in part and denied in part. The Court finds that Defendants did not properly identify Trish Coba under the Federal Rules of Civil Procedure and her affidavit will be stricken in its entirety. Further, the legal conclusions contained in the affidavit of Russell Greenblatt will be stricken as such matters are for the Court to decide. Finally, the additional expert testimony regarding the PEO/MEWA distinction contained in the affidavit of Charles Jackson will not be stricken because counsel for Plaintiff fairly raised that distinction during Mr. Jackson's deposition.

The Court finally concludes that Defendants' Motion for Reconsideration will be denied. Defendants have failed to present any additional facts or arguments to establish good cause to extend the discovery deadline.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that**:

(1) Defendants' Motion to Strike (Docket No. 106), filed April 22, 2003, is GRANTED IN PART AND DENIED IN PART;

(2) Plaintiff's Motion to Strike (Docket No. 121), filed May 8, 2003, is GRANTED IN PART AND DENIED IN PART; and

(3) Defendants' Motion for Reconsideration (Docket No. 125), filed May 9, 2003, is DENIED.

DATED:      June 19, 2003.

MIKEL H. WILLIAMS
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
District of Idaho
June 20, 2003


* * CLERK'S CERTIFICATE OF MAILING * *


Re:  1:02-cv-00012


I certify that I caused a copy of the attached document to be mailed or faxed
to the following named persons:


        Pamela McKee, Esq.        1-213-894-2064
        US DEPT OF LABOR
        Office of the Solicitor
        World Trade Center
        350 S Figueroa St #370
        Los Angeles, CA  90071-1202

        Pamela W McKee, Esq.
        US DEPT OF LABOR
        Office of the Solicitor
        World Trade Center
        350 S Figueroa St #370
        Los Angeles, CA  90071-1202

        J Kevin West, Esq.        1-208-395-8585
        HALL FARLEY OBERRECHT & BLANTON
        PO Box 1271
        Boise, ID  83701


        _____ Chief Judge B. Lynn Winmill
        _____ Judge Edward J. Lodge
        _____ Chief Magistrate Judge Larry M. Boyle
        __✓__ Magistrate Judge Mikel H. Williams

        Visiting Judges:
        _____ Judge David O. Carter
        _____ Judge John C. Coughenour
        _____ Judge Thomas S. Zilly


                        Cameron S. Burke, Clerk

Date: _____6-20-03_____        BY: _____
                               (Deputy Clerk)