IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor,<br><br>    Plaintiff,<br><br>v.<br><br>EMPLOYERS RESOURCE MANAGEMENT COMPANY, INC., a corporation; GEORGE GERSEMA, an individual; DOUGLAS GERSEMA, an an individual; EMPLOYERS RESOURCE MANAGEMENT COMPANY, INC. WELFARE BENEFIT PLAN, an employee benefit plan; and AMERICAN EMPLOYER BENEFIT TRUST,<br><br>    Defendants. | CASE NO. CV 02-12-S-EJL<br><br>**REPORT AND RECOMMENDATION AND ORDER** |

## INTRODUCTION

On January 14, 2002, the Plaintiff Elaine Chao, Secretary of Labor ("the Secretary") filed an action on behalf of the United States Department of Labor against Defendant Employer Resource Management Company, Inc. ("ERM"), an Idaho corporation, and several others, including individual Defendants George Gersema and Douglas Gersema (collectively known as "Defendants"). In the underlying action, the Secretary alleged Defendants violated various provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

**Report and Recommendation – Page 1**

1001-1461, and sought several remedies including disgorgement of profits and a permanent injunction.

Currently pending before the Court for its consideration are: (1) Defendants' Motion to Seal (Docket No. 171), filed February 24, 2005; (2) Defendants' Motion to Enforce Settlement Agreement, Vacate Trial Setting, and Shorten Time[1] (Docket No. 173), filed on February 25, 2005; (3) and Plaintiff's Cross-Motion to Enforce Settlement Agreement (Docket No. 176), filed on March 18, 2005.

In November 2004 the parties participated in a private mediation and reached a settlement which they memorialized in a handwritten document. The parties agreed that the Secretary would draft a formal consent decree and after several weeks a draft was sent to the Defendants. The consent decree contained a provision where the Defendants would pay to the Secretary a civil penalty in a sum equal to 10 percent of the "applicable recovery amount." This was a new provision and the handwritten settlement agreement contained no reference to the Defendants paying any type of penalty. Further the parties both agree that the topic of a civil penalty for a violation of ERISA based on a violation of a fiduciary duties owed by the Defendants to the plan was never raised or discussed during the private mediation. The Defendants refused to sign the consent decree which included this new provision.

Defendants seek a court order directing the Secretary to draft and sign a Consent Decree that simply memorializes what was discussed in the November 2004 mediation without any reference to civil penalties. Defendants characterize the inclusion of the contested provision

---

[1] On February 24, 2005, the District Court issued its Notice vacating the trial date in this matter "pending resolution of motions." Accordingly, Defendants' Motion to Vacate Trial Setting and Motion to Shorten Time are moot.

**Report and Recommendation – Page 2**

reserving the Secretary's right to seek civil penalties as an additional term not included in the original agreement. The Secretary, on the other hand, seeks a court order directing Defendants to sign the Proposed Consent Decree as she has now prepared it, arguing that item 10 is not an additional term, but merely a statement of the law.

On July 24, 2003, the Court heard oral arguments on the motions. The Court concludes that the agreement reached at the end of the November 2004 mediation constitutes a binding contract. In light of this finding, Defendants' Motion to Enforce the Settlement Agreement should be granted and the Secretary's Cross-Motion to Enforce the Proposed Consent Decree should be denied. The Court will also deny Defendants' Motion to Seal. The remaining motions are moot.

## REPORT

### I.
### Motions to Enforce Settlement Agreement

**A. Factual Background**

After the parties had engaged in some discovery, a settlement conference was requested before Magistrate Judge Boyle in an effort to settle the claims raised in the Secretary's Complaint. After the August 2002 settlement conference, the Secretary's counsel drafted a proposed consent judgment that compromised the Secretary's claims raised in the Complaint. The agreement also contained a provision requiring the full payment of the penalty imposed by ERISA § 502(*l*) upon payment of the judgment amount. The parties were unable to agree to all the terms of the proposed judgment and it was never signed.

Subsequently, the Secretary filed a Motion for Summary Judgment (Docket No. 58) on January 31, 2003. In its Motion for Summary Judgment, the Secretary specifically alleged that

**Report and Recommendation – Page 3**

ERM breached its fiduciary duties and engaged in prohibited transactions in connection with its management and administration of the ERM Employee Welfare Benefit Plan (the "Plan" or "ERM Plan") and that individual Defendants Douglas and George Gersema were subject to co-fiduciary liability arising from their knowledge of ERM's breach of fiduciary duty and subsequent failure to make reasonable efforts to remedy the breach.  29 U.S.C. §§ 1104 & 1106; 29 U.S.C. § 1105.  This Court recommended that the Secretary's Motion be granted in part and denied in part, finding genuine issues of material fact existed as to whether Defendants breached the ERISA prudent man standard of care, or otherwise committed any violation of part 4 of Title I of ERISA.

After the District Court adopted this Court's finding in its Memorandum Decision and Order dated March 12, 2004 (Docket no. 165), the parties renewed settlement discussions before a private mediator on May 26, 2004.  Mediation continued again on November 3, 2004.  The November, 2004 mediation proved successful and counsel for the Secretary prepared a document reflecting the agreed upon settlement terms.  The document contained the following handwritten terms:

    1. <u>Stop Loss</u>

        a. By Jan __, 2005, ERM will contribute $288,000 to the Trust, which amount will be placed in a separate investment account and used to pay claims over $150,000 and aggregate claims over the aggregate threshold.

        b. When such claims are paid out of said account, ERM will replenish the stop-loss account until it reaches $288,000.

**Report and Recommendation – Page 4**

    c. By Jan\_\_\_ of each subsequent year the amount ERM needs to contribute will be calculated by a qualified person (competent professional).

  2. <u>IBNR reserve</u>

    a. ERM agrees to make monthly payments to the trust of $25,000 per month, which amounts will be segregate [sic] into a separate investment account as a reserve for IBNR run-out.

    b. ERM will begin (said) monthly payments in Jan '05 and continue until the account has 50% of the IBNR as calculated by a competent person each Jan \_\_\_ of each year.

    c. The IBNR will be adjusted each Jan. And if the amount of the IBNR is less than the year before, funds can be removed from the reserve account until there is 50% of that year's IBNR.

    d. ERM and/or the Trust will pay the run-out that will result from the pull out of the self-funded plans from Texas.

  The above is contingent on DOL [Department of Labor] reviewing the document to be provided by Gregg Rutherford–ERM re: administrative costs.

At that time, counsel for Defendants then reviewed and approved the document. Both parties contend that they intended to resolve all substantive claims raised by the Secretary in the underlying litigation with this initial draft. Both parties also agreed that the Secretary would carry the responsibility of drafting the formalized document.

  After the settlement conference, counsel for Defendants, Byran Nickels, sent the Secretary's counsel, Pam McKee, an e-mail confirming she would be "taking first hack at the

**Report and Recommendation – Page 5**

consent decree." (Ex. B to Affidavit of Tamsen L. Leachman in Support of Motion to Enforce Settlement Agreement, Vacate Trial Setting, and Shorten Time.)  The Secretary did not immediately draft a formalized Consent Decree.  Not until approximately two weeks later did Ms. McKee contact Defendants to inform them that she had advised the Court the matter had settled.  At this time, Ms. Mckee also notified Defendants that she had advised the Court that she intended to explore the possibility of imposing a post-judgment sanction on Defendants pursuant to ERISA § 502(*l*), 29 U.S.C. § 1132(*l*), which requires the Secretary of Labor to assess a civil penalty against a fiduciary who breaches a fiduciary responsibility, or who otherwise commits any violation of part 4 of Title I of ERISA.

      In her conversation with Defendants, Ms. McKee made an offer with respect to the civil penalty, noting that the penalty under § 502(*l*) is normally equal to 20 percent of the "applicable recovery amount" either acquired through a court order or a settlement agreement, but she was willing to offer to reduce the penalty to 10 percent, which would come out of the amount they owed to the Plan.  Under this proposal, Defendants would not pay any additional money not agreed upon during settlement.  Defendants declined the offer, responding that this aspect of settlement was a material term, meaning it should have been discussed during negotiations and included in the settlement agreement.  Defendants maintained further that the Secretary's failure to do so constituted a waiver.  Counsel for Defendants sought to resolve the issue with the Secretary counsel, and Ms. McKee responded with a second Consent Decree which included a paragraph (as item 10) reserving the Secretary's right to seek civil penalties.  Defendants again refused to sign the Proposed Consent Decree.  This refusal has engendered the cross-motions to enforce the settlement agreement which are the subject of this decision.

**Report and Recommendation – Page 6**

**B. Analysis**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Under Idaho law, a settlement agreement is a contract, and the legal principles which apply to the interpretation of contracts generally apply to settlement contracts. *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1989). *Id.* In Idaho, "[s]tipulations for the settlement of litigation are regarded with favor by the courts, and will be enforced unless good cause to the contrary is shown." *Young Electric Sign Co. V. Idaho, ex rel.,* 135 Idaho 804, 808, 25 P.3d 117, 121 (2001)(internal quotations and citations omitted). "The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." *Jeff D.*, 899 F.2d at 759 (internal quotations and citations omitted). As with any contract, the formation of a settlement agreement requires agreement on the material terms. *Callie*, 829 F.2d at 891. Whether the parties to an agreement become bound prior to the drafting and execution of a contemplated formal writing is primarily a question of intent. *Kohring v. Roberston*, 137 Idaho 94 (2002).

Here, the parties agree that they reached a binding agreement at the conclusion of the November 2004 mediation. The Court must decide then whether the inclusion of the provision reserving the Secretary's right to pursue sanctions pursuant to ERISA § 502(*l*), 29 U.S.C. § 1132(*l*), is a new, material term not in the original agreement, or merely a statement of law, not affecting the settlement terms, as the Secretary suggests. As noted above, Defendants claim that the provision is a new, material term added to the agreement after settlement. Defendants

**Report and Recommendation – Page 7**

further argue that the Secretary's failure to draft and execute the Consent Decree without this provision is an anticipatory breach of the settlement. The Secretary suggests, however, that because the penalty imposed by ERISA § 502(*l*), 29 U.S.C. § 1132(*l*) is not a claim asserted on the face of the Complaint, but a post-judgment remedy, the Secretary had no obligation to address the issue during settlement negotiations.

The Court does not find the Secretary's argument persuasive that a provision reserving the Secretary's right to pursue sanctions against Defendants is a mere statement of the law. The Secretary's contention that she has a statutorily mandated duty to assess a civil penalty in every case where an ERISA violation has been alleged and a settlement reached, is slightly disingenuous because, contrary to her assertion, the imposition of a civil penalty is not automatic.

The Ninth Circuit has held that the statute does not contemplate punishment in the form of a civil penalty where no breach of fiduciary duty has occurred. *Rodriguez v. Herman,* 121 F.3d 1352 (9th Cir. 1997). In order to trigger mandatory sanctions under § 502(*l*), the Secretary must prove that the defendant breached its fiduciary duty under ERISA, and as a result of that breach, the obtains an "applicable recovery amount" from the breaching party. 29 U.S.C. § 502(*l*)(1) & (2); *Rodriguez v. Herman,* 121 F.3d 1352 (9th Cir. 1997). The Secretary can only satisfy these requirements by proving the breach as a matter of law, either through a court order, a jury verdict, or by procuring an admission from Defendants that such a breach or violation occurred. *see, e.g., Rodriguez v. Herman,* 121 F.3d 1352 (9th Cir. 1997). Thus, to characterize a provision reserving the Secretary's right to assess a civil penalty as a mere statement of the law misconstrues the statutory framework because an assessment of the ERISA § 502(*l*) civil

**Report and Recommendation – Page 8**

penalty is not automatic. Rather, it essentially amounts to an admission that the ERISA defendant breached its fiduciary duty.

Furthermore, the mere fact that a defendant enters into an agreement in ERISA case, without an admission of a violation, does not prove that a breach of fiduciary duty occurred. *Rodriguez v. Herman,* 121 F.3d at 1355. As the court in *Rodriguez* noted, "[o]ne can imagine a situation in which no breach occurred, but a fiduciary agreed to a settlement to avoid an expensive legal battle." *Id.* For this reason, the *Rodriguez* court rejected the Secretary's proposed reading that the existence of an enforceable settlement agreement allowed the Secretary to unilaterally impose an additional twenty percent penalty on the fiduciary without first proving that a violation occurred as any other conclusion would allow the Secretary alone to determine when a breach of fiduciary duty has occurred that triggers the statute. *Id.* The *Rodriguez* court, however, did allow the Secretary to impose sanctions after finding that the facts developed during the course of settlement negotiations established a breach as a matter of law.

Yet, in this case, unlike *Rodriguez*, the Secretary does not allege that the facts developed during settlement negotiations establish a breach as a matter of law. Nor did the Secretary procure an admission from Defendants that they breach their fiduciary duty as a term of the settlement agreement. Nor has the Secretary obtained a court order finding that Defendants breached their fiduciary duty. On the contrary, this Court recommended that the Secretary's summary judgment motion be denied, finding that the Secretary failed to establish that Defendants breached their fiduciary duty as a matter of law. (*See* Report and Recommendation entered on September 5, 2003, adopted in its entirety on March 12, 2004, Docket No. 165).

**Report and Recommendation – Page 9**

Thus, the Secretary has failed to establish as a preliminary matter that Defendants breached their fiduciary duty under ERISA. Because of her failure to establish as a preliminary matter that a breach occurred, the Secretary may not unilaterally insert a term in the Consent Decree, either assessing a civil penalty, or reserving her right to assess a civil penalty once the parties have agreed to settle the case, and for strategic or other reasons unknown to the Court, the Secretary chose not to bring the penalty issue to the negotiating table during the mediation.

Instead, given the imposition of a civil penalty pursuant to § 502(*l*) is tantamount to an admission on part of Defendants that they breached their fiduciary duty and in light of the potential repercussions stemming from such an admission, the Secretary should have been on notice that this was an issue to be discussed during the settlement negotiations. Particularly in light of the fact that a penalty provision was expressly included in the earlier draft of a consent decree prepared after the settlement conference in front of Judge Boyle that was never executed. Therefore, the Court finds the provision reserving the Secretary's right to assess a civil penalty on amounts recovered under the Consent Judgment is a new, material term that should have been included in the November 3, 2004 agreement.

ERISA § 502(*l*), 29 U.S.C. § 1132(*l*) allows the Secretary, in her sole discretion, to waive or reduce the civil penalty. By not proving that Defendants breached their fiduciary duty or procuring an admission that they breached their fiduciary duty as part of the settlement agreement, the Secretary has essentially abdicated her right to assess a civil penalty. Accordingly, the Court recommends that Defendants' Motion to Enforce the agreement without the provision reserving the Secretary's right to assess a civil penalty be granted. Conversely,

the Court recommends that the Secretary's Cross-Motion to Enforce the agreement with a penalty provision in the consent decree be denied.

## II.
## Motion to Seal

Defendants move the Court to seal the documents attached to their motion.  The sealing of document that are filed with the court is the exception rather than the rule as there exists a strong presumption in favor of public access to court records.  *See e.g. Foltz v. State Farm Mutual Automobile Insurance Co.,* 331 F.3d 1122 (9th Cir. 2003).  Typically, only those documents or materials that contain trade secrets or other confidential information with the scope of Federal Rule of Civil Procedure 26(c), or those materials that would cause an identifiable, significant harm, may be sealed pursuant to a court order.  *Id.*  Given the strong presumption in favor of public access, especially with respect to dispositive motions, Defendants must prove "compelling reasons" justifying the sealing of the Court's summary judgment record.  *California v. Safeway, Inc.*, 355 F.Supp. 1111, 1135 (9th Cir. 2005).  Furthermore, Defendant must "make a specific factual showing in support of their attempt to resist public access" to the documents relating to the Motion to Enforce.  *Id.*

Defendants do not allege that the documents contain trade secrets or other confidential business information.  Rather, Defendants allege that its Motion to Enforce and accompanying documents should be sealed because (1) said documents relate to compromise discussions between the parties; (2) the sealing of such documents will prevent future disputes between the parties regarding claims of waiver of the preclusionary protections of Federal Rule of Evidence 408; and (3) the sealing of such documents will assist in preventing the public from drawing

**Report and Recommendation – Page 11**

unnecessary and perhaps incorrect inferences as to either party's position based on the contents of the submissions.

None of these alleged "harms" amount to a "clearly defined, serious harm." Defendants only allude to general harms. Documents should not be sealed merely because they relate to settlement discussion among the parties. Furthermore, Defendants' next argument that sealing the documents will prevent future disputes between the parties regarding claims of waiver of the preclusionary protections of Federal Rule of Evidence 408 also fails. None of the documents offered have been submitted to prove liability as to the substantive claims in the underlying action. Nor could any of the evidence submitted be used to prove a breach of fiduciary duties under ERISA. Thus, this is not a "compelling reason" justifying denying the public access to the records. Finally, with respect to the third argument–that the information that it will lead the public to draw "unnecessary and perhaps incorrect inferences"–this is a potential danger with many documents submitted during the course of a litigation, and is not particular to this specific case; Defendants do not articulate how the documents pose a special danger of serious harm. Accordingly, the Court finds that Defendants have failed to set forth "compelling" reasons as to why the documents should be sealed and recommends that Defendants' Motion to Seal be denied.

### III.
### Conclusion

In sum, the Court finds the Settlement Agreement is enforceable against the Secretary and Defendants *without* any reference to the ERISA § 502(*l*), 29 U.S.C. § 1132(*l*) civil penalty. The Court further finds that Defendants have not made a specific factual showing in support of their attempt to resist public access" to the documents relating to the Motion to Enforce. *Id.*

## RECOMMENDATION

Based upon the foregoing, the Court being otherwise fully advised in the premises, the Court **hereby RECOMMENDS that** Defendants' Motion to Enforce Settlement Agreement, Vacate the Trial Setting and Shorten Time (Docket No. 173), filed on February 25, 2005, with respect to enforcing the settlement agreement, be GRANTED.

**IT IS FURTHER RECOMMENDED that** Plaintiff's Cross-Motion to Enforce Settlement Agreement (Docket No. 176), filed on March 18, 2005, be DENIED.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** Defendants' Motion to Seal (Docket No. 171), filed February 24, 2005, is DENIED.

**IT IS FURTHER ORDERED that** Defendants' Motion to Enforce Settlement Agreement, Vacate the Trial Setting and Shorten Time (Docket No. 173), filed on February 25, 2005, with respect to the two remaining portions regarding vacating the trial setting and shortening time, are MOOT.



DATED: June 15, 2005

Report and Recommendation – Page 13

                                                        Honorable Mikel H. Williams
                                                        United States Magistrate Judge